IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 13-0117-WS |
| | ) |
| DAVID PETERSEN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on defendant's *pro se* filing styled "*Ex Parte* Motion for Immediate Disclosure of Favorable Evidence and to Enforce the Courts Discovery Order" (doc. 202).[1] The Motion has been briefed and is now ripe.

On December 20, 2013, following a jury trial, David Petersen and two co-defendants were each convicted of one count of conspiracy to commit securities and wire fraud, in violation of 18 U.S.C. § 371; one count of aiding and abetting securities fraud, in violation of 15 U.S.C. § 77q; and 18 counts of wire fraud, in violation of 18 U.S.C. § 1343.  (*See* docs. 99, 100.)  The offenses of conviction all related to Petersen's involvement in an investment fraud Ponzi scheme that defrauded investors out of millions of dollars.  On June 10, 2014, a Judgment (doc. 149) was entered, sentencing Petersen to a term of 60 months' imprisonment on each count of conviction, said terms to run concurrently.  Petersen pursued a direct appeal, which culminated in the Eleventh Circuit Court of Appeals affirming his conviction and sentence on October 23, 2015.  (*See* doc. 201.)  The Eleventh Circuit expressly rejected Petersen's sufficiency-of-evidence challenge to his conviction, among other asserted grounds for appeal.[2]

---

[1] By Order (doc. 203) entered on December 2, 2015, the undersigned determined that the Motion had been improperly filed on an *ex parte* basis and directed the Clerk of Court to remove the *ex parte* restriction from defendant's filing.

[2] In his appeal, Petersen sought relief on grounds of sufficiency of the evidence, an alleged material variance between the Indictment and trial evidence, prosecutorial misconduct, a purported *Brady* violation, denial of minor role adjustment, purported error in loss-amount calculation, and insufficient time for appointed appellate counsel to review trial record.

On November 30, 2015, Petersen filed his present Motion seeking to compel the Government to disclose 13 categories of purportedly "exculpatory materials."  The enumerated items consist of the following: (i) all information held by the Securities and Exchange Commission that "indicates the defendant was a party to the named securities violations," and associated determinations by the SEC; (ii) documentary proof confirming FBI Agent Kennedy's trial testimony that NCIC and Interpol notices were activated and in force against the fugitive co-defendant, Timothy Durkin; (iii) all corporate books and records for Westover Energy Trading Partners LLC, Ramco and Associates LLC, Avenue Five Enterprises Inc, and Westover Capital Partner, Inc.; (iv) certified original signed investment and co-investment agreements, with accompanying chain of custody information; (v) accounting worksheets used by FBI Agent Scott in forming the expert opinions to which she testified at trial, and about which defense counsel vigorously cross-examined her; (vi) the complete FBI investigative file on Arthur Cohen (who died in August 2014) and this "unscrupulous man's business activities" dating back multiple decades; (vii) "all preferential agreements and/or treatment of witnesses;" (viii) "all post-conviction communications with the witnesses, victims, and news media sources;" (ix) all documents in a "stack of papers" that witness Delman purportedly attempted to provide to the FBI, but that Agent Kennedy refused to accept; (x) a "complete cash accrual accounting" dating back to August 2008 and including transactions omitted by the FBI's presentation at trial; (xi) "any evidence not supporting" the Government's argument at trial that "no money was sent to Westover by defendants;" (xii) *Daubert* hearing transcripts in this case; and (xiii) "weekly emails received by the defendant from Durkin to marry them to me."  (Doc. 202, at 11-23.)

There are numerous defects with Petersen's broad-based post-conviction fishing expedition.  Most importantly, as the Government correctly points out, it is procedurally improper.  Petersen cites as authority for his list of demands the principles of *Brady v. Maryland* and Rule 16, Fed.R.Crim.P.  Neither supports his position.  *Brady* held that "due process requires a prosecutor to disclose material exculpatory evidence to the defendant **before trial**," but the Supreme Court later observed that "nothing in our precedents suggest[s] that this disclosure obligation continued after the defendant was convicted and the case was closed."  *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (emphasis added).  And the Eleventh Circuit has "declined to order discovery [following conviction] based upon mere speculation as to whether the material would contain

exculpatory evidence because to do so would convert *Brady* into a discovery device." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (citation and internal quotation marks omitted); *see also United States v. Carter*, 2011 WL 1519350, *4 (S.D. Ala. Apr. 20, 2011) ("Such an open-ended fishing expedition is improper, and misapprehends the scope and reach of *Brady*.").

Thus, the law is clear that *Brady* is not a discovery device and that post-trial discovery should not be ordered based upon a defendant's idle hope that the requested material might contain exculpatory evidence. Petersen's unsupported contention that the 13 categories of information he seeks might contain information of significance to his case constitutes mere speculation, rendering improper his request for far-reaching, burdensome, post-trial discovery disguised as a *Brady* demand. Nor does Petersen's Motion find jurisdictional support in Rule 16, which on its face imposes on the Government a continuing duty of disclosure "before or during trial," Rule 16(c), Fed.R.Crim.P., without imposing a comparable duty after trial. *See United States v. Felix*, 298 Fed.Appx. 905, 906 (11th Cir. Nov. 3, 2008) ("Nothing in the rule grants the district courts the authority to enforce the rule long after the criminal case has concluded."). Thus, Petersen's Motion is not authorized under Rule 16, either.[3]

Even if Petersen had identified a proper procedural basis for his 13-pronged post-conviction discovery demand on the Government, relief would not be warranted at this time. Contrary to Petersen's suggestion, "the Constitution is not violated every time the government

---

[3] Two other potential procedural footholds for Petersen's discovery requests are likewise unavailable here. First, Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts allow petitioners to request and obtain discovery upon a showing of good cause under certain circumstances; however, Petersen has not filed a § 2255 motion and is emphatic that he, in his words, "is **not a 2255 petitioner!**" (Doc. 206, at 5 (emphasis in original).) Accordingly, Rule 6 cannot possibly provide a mechanism for the expansive discovery Petersen now seeks. Second, Petersen suggests that he is merely asking for this Court to enforce "Discovery Orders filed on 07/02/13" and that this Court is vested with the "inherent authority to enforce compliance" with its own orders at any time. (Doc. 202, at 2, 8; *see also* doc. 206, at 2-3.) Contrary to Petersen's assertions, however, the Court has no information and no reason to believe that the Government violated its discovery obligations – much less the terms of the July 2, 2013 Order on Arraignment – in this case. Thus, the civil case authorities that Petersen cites regarding a federal district court's inherent authority to enforce its own orders and manage its own cases are inapposite, and Petersen's reliance on same is misplaced.

fails or chooses not to disclose evidence that might prove helpful to the defense." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1251 (11th Cir. 2014) (citation omitted).  Rather, to show that his *Brady* rights were violated, as Petersen is accusing the Government of doing here, a defendant must establish that "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).  In his 13 categories of discovery demands, Petersen requests information that the Government obviously does not have (*i.e.*, the "stack of papers" that the FBI purportedly refused to accept from a witness, complete books and records of corporate entities, SEC records not in the custody or control of the prosecution team), evidence that does not exist (*i.e.*, transcripts of *Daubert* hearings that never occurred, promises of immunity or lenience to cooperating witnesses that appear never to have been made), evidence that Petersen had or to which he had reasonable access (*i.e.*, SEC records; corporate records; copies of investment agreements; copies of FBI accounting records, work papers, and calculations; "emails received by the defendant;" accounting data about his own financial affairs for a period that Petersen deemed more favorable than that utilized by the FBI), evidence that bears only a tangential connection to the criminal charges of which Petersen was convicted (*i.e.*, investigative file on Arthur Cohen, Interpol notice on Tim Durkin, post-conviction communications to the news media), and so on.

Moreover, the "fishing expedition" nature of most of the enumerated categories is self-evident.  None of the types of evidence identified by Petersen appear to come anywhere close to satisfying the materiality threshold established by *Brady*.  Also, the Government has expressly represented that "it went above and beyond its obligations in this case in providing Petersen and his co-defendants with a staggering amount of discovery," and has unequivocally denied "improperly withholding any *Brady* material."  (Doc. 205, at 5 n.1.)  Defendant offers nothing but speculation and conjecture to show otherwise.

For all of the foregoing reasons, Petersen's Motion for Immediate Disclosure of Favorable Evidence and to Enforce the Court's Discovery Order (doc. 202) is **denied**.  The Motion lacks an appropriate procedural basis, inasmuch as the purported *Brady* issues are speculative, *Brady* is not a discovery device, Rule 16(c) is inapplicable, Petersen has disclaimed

any intent to proceed under the Rules Governing § 2255 Motions, and the Court has no information that any of its orders in this case have been violated. Even if *Brady* principles furnished a viable procedural basis for the Motion, denial would remain appropriate because Petersen seeks disclosure of information that the Government does not have, that does not exist, that he or his lawyers already have or to which they already had access at trial, that bears minimal relevance or probative value to the issues at trial, and/or that would not satisfy the *Brady* materiality threshold in any event. The bottom line is that the Motion appears for all the world to be an attempt by Petersen to obtain extensive post-trial discovery under the guise of *Brady*, which is impermissible and improper under applicable, binding authorities.

       DONE and ORDERED this 29th day of December, 2015.

                                              s/ WILLIAM H. STEELE
                                              CHIEF UNITED STATES DISTRICT JUDGE