IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )   )  | |
| v.                                                              )  | CRIMINAL NO. 13-0117-WS |
|                                                                     )  | |
| DAVID PETERSEN,                              )   )  | |
|      Defendant.                           )  | |

**ORDER**

      This matter comes before the Court on defendant David Petersen's Motion for New Trial (doc. 218). The Motion has been briefed and is now ripe for disposition.[1] The Court resolves this Motion without a hearing because the Court is well-acquainted with the facts and procedural history of this case, and the record contains all the evidence necessary to dispose of all grounds for relief.[2]

**I.    Background.**

      On December 20, 2013, following a jury trial, David Petersen and two co-defendants were each convicted of conspiracy to commit securities and wire fraud, in violation of 18 U.S.C. § 371; aiding and abetting securities fraud, in violation of 15 U.S.C. § 77q; and 18 counts of wire fraud, in violation of 18 U.S.C. § 1343. (*See* docs. 99 & 100.) As the Eleventh Circuit

---

[1] Also pending is Petersen's Motion to Exceed Page Limits (doc. 217), wherein he requests "leave to exceed the page limits set by the local rules" and submit the 81-page memorandum incorporated in his Motion for New Trial. Under any reasonable reading, the length of Petersen's filing is markedly excessive; however, in deference to his *pro se*, incarcerated status, the Court will accept it. The Motion to Exceed Page Limits is **granted**.

[2] *See United States v. Scrushy*, 721 F.3d 1288, 1305 n.30 (11th Cir. 2013) (no abuse of discretion for district court to deny motion for new trial without a hearing, as "[a]n evidentiary hearing was not required because the record contained all the evidence needed to dispose of each of the grounds asserted as a basis for a new trial"); *United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997) (defendant is not entitled to evidentiary hearing on a motion for new trial where "the acumen gained by a trial judge over the course of the proceedings [makes him or her] well qualified to rule … without a hearing") (citation omitted).

succinctly observed, "Defendants operated a classic Ponzi scheme between 2009 and 2012." (Doc. 201, at 2.) All offenses of conviction related to Petersen's involvement in this scheme, which defrauded investors out of millions of dollars while enriching the defendants. On May 29, 2014, this Court sentenced Petersen to a term of imprisonment of 60 months as to each of Counts One through Twenty, said terms to run concurrently. (Doc. 149.)[3]

On direct appeal, Petersen raised numerous assignments of error, including sufficiency of the evidence, material variance between the Indictment and the evidence at trial, prosecutorial misconduct, *Brady* violation, denial of minor role adjustment, erroneous calculation of loss amount, and insufficient time for appellate counsel to review the record. In a *per curiam* opinion dated October 23, 2015, the Eleventh Circuit affirmed Petersen's conviction and sentence. (*See* doc. 201.) Among other conclusions, the appeals court opined that (i) "these false financial statements [Petersen] prepared were crucial to recruiting investors and keeping them in the dark;" (ii) "Petersen was necessarily aware that the account statements he was creating contained false information" and "clearly knew that he had received a substantial sum of money skimmed from the investments;" (iii) any variance as to the role of a New York real estate mogul "could not have affected Petersen's ability to prepare an adequate defense" because evidence of Peterson's guilt did not stem from "anything specifically related to this investor;" (iv) the Government did not prove up a different conspiracy omitting the fugitive defendant, Tim Durkin, but rather "mentioned Durkin's participation in the scheme throughout the trial;" (v) there was "nothing improper" about the testimony or investigation of the lead investigative agent, whom defendants cross-examined vigorously; (vi) even if the Government had not zealously sought extradition of Durkin, "Petersen failed to articulate how the outcome of his trial would have been different absent this alleged misconduct, given the ample evidence supporting his conviction;" and (vii) "Petersen supplies no facts or legal arguments to support his *Brady* claim." (Doc. 201, at 9-14.)

In the wake of the Eleventh Circuit's ruling, Petersen has filed a spate of unsuccessful motions in this District Court. First, he filed a Motion for Immediate Disclosure of Favorable

---

[3] Often overlooked in Petersen's rhetoric of unjust treatment is the fact that his advisory sentencing guidelines range for the offenses of conviction was 135 to 168 months, yet this Court imposed a sentence of less than half of the low end of that range, all despite defendant's lack of cooperation or acceptance of responsibility at any stage of the process.

Evidence (doc. 202), which this Court denied via Order (doc. 207) dated December 29, 2015 as an improper post-conviction fishing expedition.[4]  Second, Petersen filed a Motion for Reconsideration and Clarification (doc. 209), which this Court denied via Order (doc. 209) dated January 29, 2016 on the grounds that Petersen had failed to demonstrate the existence of the elements of a *Brady* violation with respect to the challenged SEC investigative records.  Third, Petersen filed a Motion to Compel Production of Grand Jury Material (doc. 210), which this Court denied via Order (doc. 211) dated February 2, 2016 because Petersen had failed to meet his burden of showing a compelling and particularized need for disclosure, or otherwise to establish exceptional circumstances.

Now Petersen has filed a sprawling, 81-page Motion for New Trial that, in substantial part, reiterates and expounds on certain failed arguments and themes animating his prior post-conviction motion practice.  As best the undersigned can discern from Petersen's filings, he seeks to advance the following grounds for relief: (i) a claim of fraud on the court, alleging that Petersen was convicted "on fabricated charges, using tampered evidence and forged securities" (doc. 218, at 9); (ii) a claim that "[t]he District Court lacked jurisdiction under Article III of the Constitution … because the entire basis and premise for the offense of conviction … were falsified, fabricated and manufactured" (*id.* at 23); (iii) a claim that the Government knowingly presented perjured testimony at trial as to the co-investment agreement, efforts to apprehend and prosecute the fugitive defendant Durkin, and the role of Arthur G. Cohen in Westover (*id.* at 39-57); (iv) claims of *Brady* violations relating to the Government's purported withholding of SEC documents pertaining to a related case, authenticated co-investment agreements, Interpol/NCIC documents pertaining to Durkin, and the FBI's investigative file on Cohen (*id.* at 57-75); and (vi) claims that this Court abdicated its gatekeeper duties under *Daubert* by allowing Government experts to pose as lay witnesses without judicial scrutiny (*id.* at 75-79).

---

[4] The December 29 Order concluded that "Petersen seeks disclosure of information that the Government does not have, that does not exist, that he or his lawyers already have or to which they already had access at trial, that bears minimal relevance or probative value to the issues at trial, and/or that would not satisfy the *Brady* materiality threshold in any event."  (Doc. 207, at 5.)

**II.     Analysis.**

   *A.     Legal Standard for Motion for New Trial.*

Both Petersen and the Government recognize that the Motion for New Trial is governed by Rule 33 of the Federal Rules of Criminal Procedure. In relevant part, that rule provides that a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Rule 33(b)(1), Fed.R.Crim.P. The jury returned a guilty verdict in this case on December 20, 2013; therefore, Petersen's Motion is filed within the three-year window authorized by Rule 33(b)(1).[5]

"Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (citation omitted); *see also United States v. Sjeklocha*, 843 F.2d 485, 487 (11th Cir. 1988) ("District courts, however, should exercise 'great caution' when granting new trials based on newly discovered evidence."). "To succeed on a motion for a new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." *United States v. Schlei*, 122 F.3d 944, 991 (11th Cir. 1997); *see also United States v. Taohim*, 817 F.3d 1215, 1223 (11th Cir. 2013); *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003). "The failure to satisfy any one of these elements is fatal to a motion for a new trial." *Schlei*, 122 F.3d at 991 (citation omitted).

---

[5]     Insofar as Petersen may be predicating his Motion for New Trial on grounds other than newly discovered evidence, however, those aspects of his Motion are time-barred. By rule, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Rule 33(b)(2). Because Petersen tarried nearly two and a half years after the guilty verdict before filing his Motion for New Trial, the sole avenue available to him for pursuing such a motion is newly discovered evidence. *See, e.g., United States v. Campa*, 459 F.3d 1121, 1154 (11th Cir. 2006) ("A court may not consider motions for new trial based on any other argument than newly discovered evidence outside the [14]-day period. This deadline is rigid.") (citation, footnote and internal marks omitted). The Court therefore declines to consider any grounds for new trial implicated by Petersen's Rule 33 Motion other than newly discovered evidence.

Where, as here, the defendant seeks a new trial based on alleged *Brady* or *Giglio* violations, the Eleventh Circuit has applied a slightly modified version of the test. In the *Brady* context, a defendant seeking a new trial must prove that "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Caro*, 589 Fed.Appx. 449, 455 (11th Cir. Oct. 29, 2014) (citing *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002)). And to obtain a new trial under *Giglio*, the defendant must establish "(1) that the prosecution used or failed to correct testimony that [it] knew or should have known was false and (2) materiality – that there is any reasonable likelihood the false testimony could have affected the judgment." *Caro*, 589 Fed.Appx. at 455 (citing *Rodriguez v. Secretary, Florida Dep't of Corrections*, 756 F.3d 1277, 1302 (11th Cir. 2014)). Notably, each of the three variants of the new trial standard "requires that there be a reasonable likelihood that the new information would have affected the outcome of the case," such that a defendant's "failure to prove this one element would be fatal to his claim under all three theories." *Caro*, 589 Fed.Appx. at 455. To satisfy the prejudice/materiality element, Petersen must show that the newly discovered evidence raises the likelihood of a different result "considerably above the level of speculation." *Ross v. State of Texas*, 474 F.2d 1150, 1153 (5th Cir. 1973).

### B. *The Purportedly Newly Discovered Evidence and False Testimony.*

As a threshold matter, the Court looks to see whether Petersen has, in fact, identified newly discovered evidence, meaning evidence discovered after trial that movant could not have obtained previously despite the exercise of due diligence.

Unfortunately, the Motion for New Trial is not a model of clarity as to exactly what items movant contends are newly discovered, as those specifics are obfuscated by multiple layers of accusatory rhetoric and redundancy. Nonetheless, careful reading of the Rule 33 Motion reveals that Petersen is apparently relying on the following purportedly "newly discovered" evidence and/or wrongfully withheld *Brady* materials: (i) the signed, authenticated Co-Investment Agreement between and among Tamashii Financial, Inc., Exponential Partners, LLC, Ramco & Associates, LLC, and Westover Energy Trading Partners, LLC (doc. 218, at 11 & Exh. 1(C)); (ii) documents showing that the Securities and Exchange Commission ("SEC") had declined to

prosecute Ramco or Westover, their principals or Petersen (doc. 218, at 16); (iii) the SEC's determination that the victims in this case (including, among others, Wesley Todd McCain) had never signed a Co-Investment Agreement, such that there were no existing securities to enforce (*id.* at 16-17); (iv) the revelation that "Ramco and Westover … never … executed any Co-Investment Agreement with McCain" and never offered, sold or issued any of the securities in question (*id.* at 28-29); (v) "new evidence" that the SEC "determined .. . that no securities violations had occurred" in this case (*id.* at 34); (vi) the SEC's decision to file a civil suit against Stephen L. Kirkland for allegedly making false and misleading statements to investors regarding investments in Westover (*id.* at 34 & Exh. 2); (vii) the SEC's purported notice to the Government "that Ramco and Westover securities did not violate any securities laws, … but instead were legal, legitimate and authorized" (*id.* at 34-35); (viii) evidence that Arthur Cohen was a Westover member, evidence that the FBI had purportedly maintained a file on Cohen for many years, and trial exhibit 658 (*id.* at 49-52, 71-74); (ix) authentic Co-Investment Agreements relating to the Kirkland investigation (*id.* at 58 & Exhs. 1(B) & 1(C)); and (x) other SEC investigative documents concerning the Kirkland matter (*id.* at 61-63).

Aside from the purportedly "newly discovered" evidence, Petersen's Rule 33 Motion appears to rely on the following instances of purportedly false testimony: (i) the Government "falsified, fabricated and altered the securities in question to create the illusion of Co-Investment Agreements" that it knew did not exist (doc. 218, at 18); (ii) the Government fabricated trial Exhibit 200, purportedly a Co-Investment Agreement signed by Wesley Todd McCain, by removing pages 8 through 12 and otherwise forging and tampering with the document (*id.* at 18-19 & Exh. 6); (iii) the Government withheld all evidence "which could support the exsistence [*sic*] of the securities in question" (*id.* at 29); (iv) the Government knowingly presented false testimony from McCain that he signed the Co-Investment Agreement (*id.* at 39-40); (v) the Government knowingly presented perjured testimony that the FBI had filed an Interpol Red Notice and entered an arrest warrant into NCIC in an attempt to apprehend fugitive defendant Tim Durkin (*id.* at 41-44, 65-68); and (vi) the Government presented perjured testimony that Arthur Cohen was not involved with Westover (*id.* at 49).

   C.   **Application of Legal Standard to Subject Evidence.**

Given the considerable repetition and overlapping, recurring themes that permeate Petersen's Rule 33 Motion, it is most efficient to examine his arguments about newly discovered, wrongfully withheld or falsely presented evidence on a category-by-category basis.

   1.   **The Purportedly Falsified Co-Investment Agreement.**

As noted, a cornerstone of Petersen's Motion for New Trial is his argument that the Government withheld evidence and presented falsified evidence at trial that Wesley Todd McCain, one of the victims of defendants' Ponzi scheme, had executed a Co-Investment Agreement with Ramco and Westover. As will be explained, however, Petersen's contentions distort and mischaracterize the evidence admitted at trial.

Contrary to Petersen's theory, McCain's trial testimony was clear that he had not actually signed a Co-Investment Agreement. Indeed, McCain testified that he had received a copy of an agreement between co-defendant Yaman Sencan and Ramco/Westover. (Doc. 190, at 63-64.) McCain identified that document as Government's Exhibit 200. (*Id.* at 64.) McCain expressly acknowledged in his testimony that his name was not on the Co-Investment Agreement between Sencan and Ramco/Westover. (*Id.* at 66.) On its face, Exhibit 200 contained a cover note from "Yaman" specifying that "attached is a copy of my signed Westover/Ramco-investment agreement …. Your funds will be co-mingled along with mine in the general Ramco omnibus account in Westover …. ***All other terms and conditions in the exhibit … will flow through to you directly and apply equally***." (Doc. 218, Exh. 6, at 1 (emphasis added).) On the same page as Sencan's explanatory cover note was a four-paragraph Non-Disclosure/ Circumvention/ Solicitation Agreement, which McCain signed on October 19, 2010. (*Id.*) The remainder of Exhibit 200 purports to be a copy of the Co-Investment Agreement executed between and among Sencan, Ramco and Westover. McCain never testified that he signed anything other than the four-paragraph non-disclosure agreement and certainly never testified that he executed a Co-Investment Agreement in his own name.[6] The Government never argued or represented otherwise to the jury. Petersen's assertions to the contrary badly misstate the record.

---

   [6]   Petersen's argument appears to be an attempt to exploit the excerpt in McCain's trial testimony where McCain referenced "[t]he signed document that I had received" and answered affirmatively when asked if he had signed "[t]his one right here (indicating)." (Doc. 190, at 64-65.) What McCain was indicating he had signed was the four-paragraph Non-
(Continued)

In short, there is no evidence that the Government engaged in fraud, withheld *Brady* material, or knowingly presented false testimony concerning what McCain signed.  The record at trial plainly established that McCain signed only a Non-Disclosure Agreement and that his arrangement with Sencan was that all terms of Sencan's Co-Investment Agreement with Ramco and Westover would flow through and apply to McCain pursuant to the McCain/Sencan commingled funds arrangement.[7]  Petersen's accusations of *Brady* or *Giglio* violations on this point are frivolous.  Nor can Petersen bolster his Rule 33 Motion by arguing (as he does) that Exhibit 1(C) to his Motion, a Co-Investment Agreement executed by Tamashii Financial, Inc., Exponential Partners, LLC, Ramco & Associates, LLC, and Westover Energy Trading Partners, LLC, constitutes newly discovered evidence that exposes the McCain Agreement as a fabrication.  After all, the Government has conclusively shown that the Tamashii Agreement was produced to Petersen in discovery well before trial.  (Doc. 220, Exhs. 2, 4.)[8]  Petersen has thus

---

Disclosure Agreement, <u>not</u> the Co-Investment Agreement that bore Sencan's name and signature.  McCain never testified that he had executed the Co-Investment Agreement in Sencan's name, and defendant's position otherwise is irreconcilable with the record.  To be sure, Petersen relies on the Government's Trial Exhibit List, which described Exhibit 200 as "McCain's signed Co-Investment Agreement."  (Doc. 218, Exh. 5.)  That the Government used an inaccurate or imprecise description to label Exhibit 200 in its Exhibit List is not probative of any misconduct or falsification of evidence, much less a colorable basis for a new trial.  If defendant were dissatisfied with how Exhibit 200 was described in the Government's Exhibit List, he could have objected at trial; however, he did not.  He cannot do so now for the first time, some two and a half years after the fact.

[7]   Although he complains at length that the Government tampered with and forged documents that witnesses/investors such as McCain had never signed, Petersen acknowledges the clarity of the record on this point.  Indeed, he concedes that the factual predicate of his argument "is demonstrated by simply examining the securities in question, the 'McCain's signed Co-Investment Agreement'" (doc. 218, at 22), to which Petersen unquestionably had access before trial.  Thus, he is not relying on newly discovered evidence, but is instead stitching together new arguments based on previously available facts and exhibits produced to him before trial.  He therefore does not and cannot meet the legal standard for a new trial, even if his characterization of the testimony were accurate (which it is not).

[8]   Petersen's Rule 33 Motion engages in a paragraph-by-paragraph comparison of the Tamashii Agreement with the Co-Investment Agreement referenced in McCain's testimony.  Had Petersen's counsel wished to introduce evidence or argument at trial pertaining to those discrepancies, or to cross-examine McCain or any other witness about purportedly "missing pages" in the latter document, he was fully equipped to do so.  This is simply not "newly (Continued)

failed to establish that any evidence pertaining to the Co-Investment Agreement or documentation signed by McCain is newly discovered, was wrongfully withheld by the Government, or was the subject of knowingly falsified testimony at trial; therefore, he is not entitled to the highly disfavored remedy of a new trial on that basis.

### 2. The SEC's Investigation of the Kirkland Matter.

Another category of evidence that Petersen cites as being newly discovered and wrongfully withheld in violation of *Brady* relates to the SEC's investigation of Stephen Kirkland and its ultimate decision to initiate civil litigation (the "*Kirkland* Lawsuit") against him and his company (The Kirkland Organization, Inc.). The *Kirkland* Lawsuit, which was filed in the U.S. District Court for the Northern District of Georgia, alleged that Kirkland had committed securities violations by making false representations to investors concerning Westover and investments in Westover.

Revelations about the *Kirkland* Lawsuit cannot support Petersen's Rule 33 Motion for at least three reasons. First, insofar as Petersen maintains that SEC investigative materials in the *Kirkland* matter are newly discovered evidence, the record conclusively establishes that Petersen received such evidence before trial. Specifically, in June 2013, the Government sent Petersen's counsel a CD labeled "SEC Docs re: Kirkland" that included more than 2,100 pages of investigative materials, including many of the exhibits attached to Petersen's Motion for New Trial. (Doc. 220, at 8 & Exhs. 1-4.) Such evidence plainly does not qualify as "newly discovered" within the meaning of Rule 33.

Second, although Petersen's Motion is rife with allegations that the SEC made a specific determination exonerating him from securities-related wrongdoing, he identifies no evidence that might reasonably support such an assertion. Rather, it appears that, as he has done in previous

---

discovered" evidence of the sort that might justify a Motion for New Trial filed years after the guilty verdict. And Petersen's attempt in his Reply to highlight discrepancies between (i) Exhibit 200 introduced into evidence at trial and (ii) the copy of those documents produced by the Government in discovery (*see* doc. 221, at 9-10 & Exh. A) would likewise have been fodder for cross-examination, or perhaps an objection to admissibility of Exhibit 200 as offered, if defendant had wished to do so; however, it does not constitute and cannot rise to the level of Rule 33 "newly discovered" evidence because, again, it was furnished to Petersen's counsel in discovery.

post-conviction filings, Petersen is conflating the SEC's failure to bring criminal or civil proceedings against him with some kind of binding, final SEC conclusion that Petersen was culpable neither in the *Kirkland* matter nor in his dealings with Westover/Ramco in general. Simply put, defendant has identified no evidence, newly discovered or otherwise, supporting a reasonable inference that the SEC made a formal administrative finding that absolved Petersen of any securities violations; therefore, he cannot predicate a Rule 33 Motion on such nonexistent evidence.[9]

Third, Petersen's assertions that the Government violated *Brady* by not disclosing the *Kirkland* Lawsuit, or that the existence of such lawsuit constitutes newly discovered evidence, do not justify the highly disfavored remedy of a new trial. For such evidence to warrant Rule 33 relief, Petersen must show that he could not have discovered it with due diligence at the time of trial. He certainly could have. The *Kirkland* complaint was filed on a public docket sheet in the U.S. District Court for the Northern District of Georgia on September 23, 2013, nearly three months before Petersen's case went to trial. Given his knowledge of the SEC's investigation of Kirkland (based on materials produced by the Government in discovery), Petersen could have ascertained with relative ease whether the SEC had commenced legal proceedings against Kirkland, had he wished to do so. Yet he did not. Moreover, even if Petersen could satisfy the "due diligence" requirement, his theory that post-trial discovery of the *Kirkland* Lawsuit entitles him to a new trial fails because the existence of that civil action in no way constitutes material evidence reasonably likely to have affected the outcome of Petersen's trial. That the SEC sued Kirkland for securities fraud relating to the Westover matter, based on conduct similar to the Westover/Ramco Ponzi scheme of which Petersen and his co-conspirators were convicted, is in no way exculpatory for Petersen. Apparently, Petersen would have sought to introduce the *Kirkland* Lawsuit into evidence to show the SEC's "refusal to prosecute or enforce the securities at issue" (doc. 221, at 16); however, the *Kirkland* complaint would not properly have been admissible for that purpose, and could not have supported a reasonable inference that the SEC had reached a determination absolving Petersen of all wrongdoing.

---

[9] The Court has previously written to this issue in the January 29 Order, which points out the defects in Petersen's assertion that that the SEC made an exculpatory investigative finding that exonerated him. (*See* doc. 209, at 2.) It would serve no constructive purpose to reiterate those observations and conclusions from the January 29 Order here.

For all of these reasons, the Court finds that the Motion for New Trial is due to be **denied** insofar as it rests on the SEC's investigation of Stephen Kirkland and subsequent decision to initiate civil litigation against him.[10]

### 3. Arthur G. Cohen and Westover.

The third category of evidence on which Petersen's Motion for New Trial is grounded relates to Arthur G. Cohen, a New York real estate mogul who was a principal in Westover. Petersen balks that the Government failed to disclose Cohen's involvement with Westover, withheld evidence establishing Cohen's role at Westover, and presented perjured testimony falsely denying any such connection. (Doc. 218, at 49-57.) Defendant's argument is counterfactual. At trial, the Government introduced an exhibit and elicited testimony from its own witness (FBI forensic accountant Katheryn Scott) that Cohen had been one of two owners of Avenue Five Enterprises, Inc., which formed Westover Energy Trading Partners, LLC to perform trading functions. (Doc. 220, Exh. 5, at 547-50.) Evidence of Cohen's involvement in Westover was thus clearly set forth in the Government's case-in-chief. Petersen's insistence that the Government concealed, denied and lied about Cohen's involvement in Westover is thus contrary to the record and cannot support Rule 33 relief.[11]

---

[10] One other significant error in Petersen's filings relating to the *Kirkland* Lawsuit warrants correction at this time. Throughout his briefs, Petersen repeatedly insists that the Government was duty-bound under something he calls "Local Rule 40.2" to notify Petersen about the *Kirkland* matter as a related case. (*See* doc. 218, at 59-62 & Exh. 3; doc. 221, at 5-6, 12, 26.) Petersen is mistaken. The Local Rules for the United States District Court for the Southern District of Alabama do not include a "Local Rule 40.2" and do not require parties to notify other parties of the existence of a potentially related case. It appears that Petersen is relying on a local rule from the U.S. District Court for the District of Alaska, which of course has no application here. As such, Petersen's repeated assertion that the Government violated the Local Rules by not telling him about the *Kirkland* Lawsuit is misguided.

[11] Indeed, Petersen concedes the point in his Reply by acknowledging that (despite devoting a portion of his Motion to arguing that the Government falsely denied Cohen's role at Westover and withheld information concerning same) "it was about Cohen's Westover ownership, which we agree that it was known." (Doc. 221, at 22.) Petersen goes on to state that the defense had and presented documents at trial establishing that "Cohen's principal position was Managing Member of Westover." (*Id.* at 23.) These admissions expose the frivolity of Petersen's arguments in his Motion for New Trial that the Government withheld evidence of Cohen's role at Westover, rendering the defendant unaware of same until encountering newly discovered evidence to that effect after trial.

Likewise, Petersen's suggestion that Government Exhibit 658 (relating to Cohen) was withheld or concealed from the jury is simply not true. (Doc. 218, at 52, 57.) Government Exhibit 658 was admitted into evidence at trial. (Doc. 220, Exh. 5, at 547.) At the close of trial, Exhibit 658 – along with all other exhibits admitted into evidence – was sent back to the jury room and was available to the jury throughout its deliberations.[12]

Nor does Petersen advance his cause by positing that a "25+ year FBI investigative file" (doc. 218, at 71) about Cohen's purported wrongdoing constitutes newly discovered evidence or *Brady* material. Petersen's sole evidence of the existence or contents of such a file is a Department of Justice press release dated August 27, 1998, announcing settlement of a civil suit between the Government and Cohen for alleged violations of federal banking laws in connection with Cohen's ownership of CorEast Savings Bank, FSB of Richmond, Virginia. (Doc. 218, Exh. 12.) Nothing in that press release references an FBI investigative file on Cohen, much less offers any reason to believe that such a file chronicles decades of malfeasance. Even if Petersen had proven the existence of such a file, relating to investigations into Cohen's activities predating by well over 10 years the fraudulent scheme that Petersen and his co-conspirators were convicted of implementing, relief would remain inappropriate because Petersen has not shown a reasonable likelihood that the outcome of his trial would have been different had he been given access to such a file. Petersen was not on trial for anything that Arthur Cohen did or did not do. Rather, he was on trial for his own participation in a Ponzi scheme with Yaman Sencan, Tim Durkin and Stephen Merry that resulted in diversion of $1.5 million from investors/victims into defendants' pockets. Evidence at trial established that the funds entrusted by investors to Sencan/ Durkin/ Merry/ Petersen were never actually invested in Cohen's company (Westover), so Cohen would not have had access to them. In this context, evidence that Cohen might have had a history of

---

[12] Petersen argues that the jury never saw Exhibit 658, and that such document had been omitted from the trial record, because it is not listed on the Government's exhibit list. Petersen is wrong. The Government's Exhibit List annotated by the Courtroom Deputy and maintained on file by the Clerk of Court confirms that Exhibit 658 was admitted into evidence on December 16, 2013. (Doc. 104, at 52.) A number of documents not on the Government's original printed Exhibit List were admitted into evidence at trial and are reflected on the Exhibit List via handwritten notation made by the Courtroom Deputy. Such an innocuous, commonplace occurrence is in no way indicative of impropriety, chicanery or destruction of evidence.

shady dealings or wrongdoing in the 1990s would not have been exculpatory to Petersen and certainly would not have been reasonably likely to affect the outcome of the trial.[13]

For all of these reasons, Petersen's Motion for New Trial is **denied** insofar as it is based on his category of arguments and clams pertaining to Arthur Cohen.

### 4. *Efforts to Apprehend Tim Durkin.*

Finally, Petersen seeks Rule 33 relief based on a series of arguments pertaining to Tim Durkin, the fugitive defendant who was named in the Indictment but whom the Government has never apprehended. At trial, the Government presented testimony that Durkin had been indicted, that he was not in custody, and that the FBI believed Durkin was "somewhere in the United Kingdom." (Doc. 220, Exh. 5, at 273.) The Government further presented testimony that the FBI had taken various measures to capture Durkin, such as entering an arrest warrant into NCIC and submitting an "Interpol Red Notice" to Interpol, requesting that foreign law enforcement agencies attempt to arrest Durkin pursuant to the U.S. arrest warrant. (*Id.* at 273-74.)

Petersen's position is that all of this testimony is a sham, an outright lie, and that the subject arrest warrant was never filed with NCIC or Interpol. (Doc. 218, at 41-46, 65-68.) As evidence to support this contention, Petersen points out that the Interpol Red Notice for Durkin is shown as having been published on April 16, 2014, four months after the trial in this case. (Doc. 218, Exh. 10.) Petersen also shows that the U.S. Marshals Service did not include Durkin's name in a list of "profiled fugitives" as of May 18, 2015. (Doc. 218, Exh. 11.)

Defendant's arguments pertaining to Tim Durkin do not support the extraordinary, disfavored remedy of a new trial for at least two reasons. First, Petersen has failed to show that the subject testimony was actually false, much less that the prosecuting attorneys knew it to be false. The trial testimony in question from the FBI agent consisted of statements that "we have

---

[13] As discussed *supra*, in order to establish prejudice arising from a *Brady* violation such as that claimed by Petersen with respect to the alleged FBI file, a defendant must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015) (citation omitted). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome," rather than a "mere possibility" that such evidence would have helped the defense or "might have affected the outcome." *Id.* (citations omitted). Petersen's arguments concerning the purportedly withheld FBI investigative file on Arthur Cohen do not remotely undermine confidence in the jury verdict.

entered an arrest warrant into what's called NCIC," that "[w]e have also placed a Notice with Immigration that if [Durkin] were to attempt to enter the country … that he would be detained immediately," and that the agent had "also forwarded the arrest warrant on to Interpol … requesting that they acknowledge our arrest warrant and attempt to execute it." (Doc. 220, Exh. 5, at 273-74.)   The agent did not testify that an Interpol Red Notice had actually been issued, only that he had made the request.  There is thus no inconsistency between Petersen's evidence that Interpol had published the Red Notice on Durkin on April 16, 2014, on the one hand, and the FBI agent's testimony at trial in December 2013 that he had forwarded Durkin's arrest warrant to Interpol.  Nor has Petersen shown any evidence of other falsehoods in the subject testimony. Petersen's own evidence confirms that an arrest warrant for Durkin was issued on June 6, 2013; and that an Interpol Red Notice was published on April 16, 2014.[14]  Petersen identifies no evidence that the FBI did not actually enter that arrest warrant into the National Crime Information Center database, rendering it accessible to federal, state and local law enforcement officers nationwide.  Defendant has likewise failed to show that the testimony at trial was false on these points, or that he has obtained new evidence proving otherwise.

Even if Petersen had somehow shown that the Government's evidence concerning the Durkin arrest warrant, NCIC listing, and request for an Interpol Red Notice was false (which he has not), he would not be eligible for a new trial.  The Government's case against Petersen was compelling.  Its evidence against Petersen would remain strong even if it were revealed that the FBI had been dilatory in its efforts to arrest the fugitive defendant Durkin.  There is no reasonable possibility that the outcome of Petersen's trial would have been different if the jury had known that the FBI were taking no substantial action to locate and apprehend Durkin.[15]

---

[14]   That Interpol Red Notice recites particulars about Durkin (name, date of birth, nationality, occupation, passport number, physical description), summarizes the facts of the Indictment and the charges against Durkin, and specifies that if Durkin is found, the United States requests that he be "locate[d] and arrest[ed] with a view to extradition," such that "this red notice is to be treated as a formal request for provisional arrest" by the United States. (Doc. 218, Exh. 10.)

[15]   The Eleventh Circuit reached the same conclusion on direct appeal, reasoning that even if the Government had not been diligently seeking to apprehend Durkin, such a revelation would have made no difference given the ample evidence supporting Petersen's conviction. (Doc. 201, at 13-14.)

Even if Petersen had obtained new evidence raising an inference that the FBI were not really trying to arrest Durkin (which he has not), that evidence would have served merely to impeach the testimony of the FBI agent who testified at trial. Of course, "[n]ewly discovered impeaching evidence is unworthy of a new trial." *United States v. Garcia*, 13 F.3d 1464, 1472 (11th Cir. 1994) (citation omitted); *see also United States v. Barsoum*, 763 F.3d 1321, 1341 (11th Cir. 2014) (no abuse of discretion in denial of motion for new trial where "the purportedly 'newly-discovered' evidence was either impeachment evidence or cumulative of other evidence presented at trial"). This is particularly true where the alleged impeachment evidence relates only to a collateral matter, and not to Petersen's criminal conduct, knowledge, involvement and participation in the Ponzi scheme. No new trial is warranted on this basis.

### III. Conclusion.

Binding precedent instructs that motions for a new trial are highly disfavored and should be granted only with great caution and only where the defendant has met his burden of justifying a new trial. Petersen has failed to satisfy this burden. With respect to the multiple categories of evidence identified in his Motion, Petersen has not shown that (i) he has obtained new evidence that he could not have obtained previously with due diligence, (ii) the Government withheld *Brady* evidence before trial, (iii) the Government knowingly presented false testimony at trial in violation of *Giglio*, or (iv) that any such new evidence, withheld *Brady* evidence, or *Giglio* violation concerns matters that, if known by or disclosed to defendant, would have been reasonably likely to yield a different result at trial. Accordingly, Petersen's Motion for a New Trial (doc. 218) is **denied**.[16]

---

[16] Four final clarifications as to the merits of Petersen's Motion warrant brief treatment. First, Petersen argues at some length in his filings that the absence of a signed Co-Investment Agreement by Wesley Todd McCain deprives this Court of subject matter jurisdiction by eliminating any case or controversy. This argument is frivolous. *See Alikhani v. United States*, 200 F.3d 732, 734-35 (11th Cir. 2000) ("Congress has provided the district courts with jurisdiction – 'exclusive of the courts of the States' – of 'all offenses against the laws of the United States.' 18 U.S.C. § 3231. The United States filed an indictment charging Alikhani with violating 'laws of the United States,' and § 3231 on its face empowered the district court to enter judgment upon the merits of the indictment …."). At most, Petersen's argument about the presence or absence of a signed agreement goes to the Government's ability to prove the elements of the crimes charged in the Indictment. It in no way implicates Article III standing or jurisdiction. Second, Petersen repeatedly makes reckless accusations of unauthorized removal or destruction of trial exhibits from the court file. (*See, e.g.*, doc. 218, at 30, 39.) Such allegations
(Continued)

For all of the foregoing reasons, the Court **certifies** that any appeal from this Order would be frivolous and not brought in good faith; therefore, Petersen will not be permitted to appeal *in forma pauperis* pursuant to 28 U.S.C. § 1915.

DONE and ORDERED this 26th day of July, 2016.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

lack even a shred of factual support.  All trial exhibits in this case are maintained by the Clerk of Court, and have been continuously maintained by the Clerk of Court since the December 2013 trial date.  No trial exhibits have been removed, destroyed, stolen or tampered with since they were admitted into evidence.  Petersen's argument recklessly impugns the integrity of the Clerk of Court with not even a scintilla of factual support.  Third, another recurring theme in Petersen's filings is that the SEC's alleged decision not to pursue criminal, civil or administrative action against Petersen deprived the Department of Justice of the authority to pursue criminal charges against him.  This argument proceeds from a misguided, incorrect reading of the authorities he cites.  Cases like *Heckler v. Chaney*, 470 U.S. 821, 837-38, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) and *U.S.S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 297 (2nd Cir. 2014), do not stand for the proposition that the Department of Justice lacks prosecutorial authority if the SEC declines to bring charges against a defendant; rather, those decisions speak only to the ability of individuals or courts to second-guess an agency's decision not to undertake enforcement actions.  They say nothing about the interplay between the SEC's enforcement authority and that of the Department of Justice.  As such, those decisions are inapposite.  Fourth, while Petersen complains that this Court failed to perform a gatekeeper role by not holding *Daubert* hearings before allowing certain Government witnesses to testify, that argument is not a cognizable ground under Rule 33 for a Motion for New Trial filed nearly two and a half years after the fact; therefore, it cannot and will not be considered.