## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID PETERSEN** | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO.      17-00127-WS** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 13-00117-WS-N** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

David Petersen ("Petersen" or "Petitioner"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 237[1]). The Court has referred the petition to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* S.D. Ala. GenLR 72(b); (3/20/2017 electronic referral).

The United States has timely filed a response (Doc. 238) in opposition to Petersen's § 2255 motion, and Petersen has filed a reply (Doc. 241[2]) to the response.

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

[2] Petersen also filed a "supplement" to his § 2255 motion which contained a Motion to Invalidate, Reverse, Set-Aside, or Modify the Order of Restitution pursuant to Federal Rules of Civil Procedure 60 and 62. The undersigned also recommends that this motion (Doc. 241) be **DENIED**, as these rules are not applicable to a judgment in a criminal case.

The motion is now under submission for determination of whether expansion of the record and/ or an evidentiary hearing is warranted.  *See* Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is not warranted and **RECOMMENDS** that Petersen's § 2255 motion (Doc. 44) is due to be **DISMISSED with prejudice**.

On January 29, 2018, Petersen filed a motion labeled "Ex Parte Motion for Judgment on the Pleadings related to 2255 Motion before this Court" and later filed a Motion to Unseal the same (Docs. 247, 248).  For the reasons discussed in more detail below, the undersigned also **RECOMMENDS** that the Motion for Judgment on the Pleadings (Doc. 237) be **DENIED** and that the Motion to Unseal be **GRANTED**.

## I.   Background[3]

On December 20, 2013, following a jury trial, David Petersen and two co-defendants were each convicted of conspiracy to commit securities and wire fraud, in violation of 18 U.S.C. § 371; aiding and abetting securities fraud, in violation of 15 U.S.C. § 77q; and 18 counts of wire fraud, in violation of 18 U.S.C. § 1343. (See Docs. 99 & 100.) As the Court of Appeals for the Eleventh Circuit observed, "Defendants operated a classic Ponzi scheme between 2009 and 2012." (Doc. 201, at 2.) All offenses

---

[3] As this case is well known to this court, the undersigned repeats the background from Senior United States District Judge William H. Steele's order denying Petersen's motion for a new trial. (Doc. 224).

of conviction related to Petersen's involvement in this scheme, which defrauded investors out of millions of dollars while enriching the defendants.

On May 29, 2014, this Court sentenced Petersen to a term of imprisonment of 60 months as to each of Counts One through Twenty, said terms to run concurrently. (Doc. 149.) On direct appeal, Petersen raised numerous assignments of error, including sufficiency of the evidence, material variance between the Indictment and the evidence at trial, prosecutorial misconduct, *Brady*[4] violation, denial of minor role adjustment, erroneous calculation of loss amount, and insufficient time for appellate counsel to review the record.

In a *per curiam* opinion dated October 23, 2015, the Court of Appeals affirmed Petersen's conviction and sentence. (Doc. 201.) Among other conclusions, the appeals court opined that (i) "these false financial statements [Petersen] prepared were crucial to recruiting investors and keeping them in the dark;" (ii) "Petersen was necessarily aware that the account statements he was creating contained false information" and "clearly knew that he had received a substantial sum of money skimmed from the investments;" (iii) any variance as to the role of a New York real estate mogul "could not have affected Petersen's ability to prepare an adequate defense" because evidence of Petersen's guilt did not stem from "anything specifically related to this investor;" (iv) the Government did not prove up a different conspiracy omitting the fugitive defendant, Tim Durkin, but rather "mentioned Durkin's participation in the scheme throughout the trial;" (v) there was "nothing improper"

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963)

about the testimony or investigation of the lead investigative agent, whom defendants cross-examined vigorously; (vi) even if the Government had not zealously sought extradition of Durkin, "Petersen failed to articulate how the outcome of his trial would have been different absent this alleged misconduct, given the ample evidence supporting his conviction;" and (vii) "Petersen supplies no facts or legal arguments to support his *Brady* claim." (Doc. 201, at 9-14.)

Following the Court of Appeals' ruling, Petersen filed a number of unsuccessful motions in this District Court. First, he filed a Motion for Immediate Disclosure of Favorable Evidence (Doc. 202), which this Court denied via Order (Doc. 207) dated December 29, 2015 as an improper post-conviction fishing expedition. Second, Petersen filed a Motion for Reconsideration and Clarification (Doc. 209), which this Court denied via Order (Doc. 209) dated January 29, 2016 on the grounds that Petersen had failed to demonstrate the existence of the elements of a *Brady* violation with respect to the challenged Securities and Exchange Commission ("SEC") investigative records. Third, Petersen filed a Motion to Compel Production of Grand Jury Material (Doc. 210), which this Court denied via Order (Doc. 211) dated February 2, 2016 because Petersen had failed to meet his burden of showing a compelling and particularized need for disclosure, or otherwise to establish exceptional circumstances.

On May 23, 2016, Petersen filed a motion for a new trial pursuant to Fed. R. Crim. P. 60. (Doc. 218). On July 26, 2016, in a detailed order, the District Court denied the motion. (Doc. 224). Shortly thereafter, Petersen filed a Notice of Appeal. (Doc.

227).[5] On March 20, 2017, while his appeal of the district court's denial of his Rule 33 motion was pending, Petersen filed the instant motion pursuant to 28 U.S.C. § 2255, raising a myriad of claims of ineffective assistance of counsel. (Doc. 237). The Court withheld ruling on the § 2255 motion while Petersen's appeal of the District Court's order denying his motion for new trial remained pending before the Court of Appeals. On September 13, 2017, the Court of Appeals affirmed the District Court's denial of Petersen's motion for new trial, and the mandate issued October 12, 2017.

## II.    Legal Standards

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

---

[5] A motion for reduction of sentence was also filed and denied while the appeal was pending. (See Docs. 232-234)

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's §

2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted).  *Accord, e.g.*, *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).  The Court must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255."  *Winthrop-Redin*, 767 F.3d at 1215.

## III.  Analysis

Petersen's grounds for relief fall into three categories: 1) prosecutorial misconduct, 2) ineffective assistance of counsel, and 3) failure of the district court to act properly. These categories of relief are addressed in turn.

### A.  Allegations of Prosecutorial Misconduct

Petersen's prosecutorial misconduct claims are procedurally barred. In his first appeal Petersen raised several claims of prosecutorial misconduct. All were rejected on the merits by the Court of Appeals for the Eleventh Circuit.  Petersen later filed a Fed. R. Crim. P. 33 Motion for New Trial, raising additional claims of prosecutorial misconduct. In a detailed ruling, this Court denied the motion, rejecting Petersen's claims of misconduct. (Doc. 218). The Court of Appeals affirmed that ruling. (Doc. 247). When comparing the claims presented in the § 2255 motion, and those claims raised on direct appeal and in Petersen's Rule 33 motion, with the Court of Appeals' orders affirming the district court, it is clear that Petersen's arguments pertaining to prosecutorial misconduct have been raised and rejected.[6] His attempts to re-argue these claims on collateral review fails.  As these arguments were raised on direct

---

[6] *See also*, Doc. 201 (Court of Appeals' Order affirming on direct appeal).

appeal, they are procedurally barred. *Wilson v. United States*, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017), *cert. denied*, 138 S. Ct. 196 (2017)(citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)).

To the extent some of his claims of prosecutorial misconduct are newly raised, the claims were available to be raised on appeal, but Petersen did not raise them. Thus, Petersen is also procedurally barred from raising them now.

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Reed v. Fairley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) ( " '[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal.' "). To adequately preserve a claim, a Defendant must raise it both before the trial court (whether by motion, objection, or otherwise) and also on direct appeal. *See Murray v. Carrier,* 477 U.S. 478, 490–92 (1986). *United States v. Johnson,* 988 F.2d 941, 945 (9th Cir.1993) (If a defendant "could have raised" the supposed constitutional violation previously, he defaults on the opportunity to pursue the claim for the first time pursuant to § 2255). The procedural bar applies to claims of prosecutorial misconduct, where the claims were available to be raised previously but were not. *See Lynn v. United States,* 365 F.3d 1225, 1234–37 (11th Cir.2004) (dismissing § 2255 allegations of prosecutorial misconduct and other violations on grounds of procedural default where claims were based in large part on facts previously in the record but were never raised below).

8

An exception to the procedural bar rule is where a petitioner can show "cause and actual prejudice." *Lynn,* 365 F.3d at 1234 (citing *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) ("A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error."). Alternatively, a petitioner can escape the procedural bar rule where he can show that he is actually innocent and that a failure to address the unpreserved claims would result in a fundamental miscarriage of justice. *Lynn,* 365 F.3d at 1234–35 (quoting *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir.1994) ("Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' ").

The Eleventh Circuit has stated that this standard requires a showing that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Mills,* 36 F.3d at 1055–56 (citing *Murray,* 477 U.S. at 496). These exceptions do not apply. As the Court of Appeals observed, the evidence presented in support of Petersen's conviction was "more than adequate." (Doc. 201 at 7). As for "cause and actual prejudice," Petersen does not allege any cause at all for having failed to preserve his prosecutorial misconduct claims. Accordingly, the undersigned

**RECOMMENDS** that Petersen's prosecutorial misconduct claims be **DENIED** as they are procedurally barred.[7]

### B.   Claims of Ineffective Assistance of Counsel

Though he has re-categorized his claims as claims of ineffective assistance of counsel, Petersen raises nearly all of the same arguments this Court and the Court of Appeals have previously considered and rejected. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); *see also Jones v. United States,* 478 F. App'x. 536, 539–40 (11th Cir. 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[8] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance." *Demar v. United States,* 228 F. App'x. 940, 950 (11th Cir. 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir.2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both

---

[7] Further, for the reasons discussed in the United States' response, Petersen's prosecutorial misconduct claims would fail on the merits. (Doc. 238 at 17-18).

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle,* 535 U.S. 926 (2002).[9]

> The Court of Appeals for the Eleventh Circuit has observed:
>
> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[10] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.
>
> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Department of Corrections,* 433 F. App'x. 852, 855 (11th Cir. 2011)

(internal quotation marks and citations omitted; footnote added), *cert. denied sub nom. Means v. Tucker,* 565 U.S. 1217 (2012) *see also Pair v. Cummins,* 373 F. App'x. 979, 981–82 (11th Cir. 2010).[11]

---

[9] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), cert. denied, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[10] In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

[11] ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy.... Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary,* 141 F.3d 1018, 1023 (11th Cir.1998) (citation omitted), *cert. denied,* 527 U.S. 1008 (1999); *see also Adamson v. United States,* 288 F. App'x. 591, 594 (11th Cir. 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010 (2008); *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir.2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Finally, "vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim." *Rosado v. Secretary, Dep't of Corrections,* 2010 WL 2976886, *4 (M.D.Fla. Jul. 20, 2010), citing *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir.1991). With these principles in mind, the undersigned now considers Petersen's claims of alleged ineffective assistance of counsel.

Petersen's first four claims of ineffective assistance of counsel are based on many of the same arguments raised in his motion for new trial. Though those claims

---

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

were rejected on the merits in the Court of Appeals' order affirming the district court's denial of Petersen's motion for a new trial, Petersen re-characterizes the claims as those of ineffective assistance of counsel in the instant § 2255 proceeding. As discussed below, for the same reasons the claims were denied on their merits, the claims fail to meet the *Strickland* prejudice prong.

In Claim II.A.i., Petersen claims counsel was ineffective as follows: "The lack of finding by counsel and using the [Securities and Exchange Commission ("SEC")] final agency determination and enforcement actions in *SEC v. Kirkland* a case that the Government says mirrors this case." (Doc. 237 at 12). Petersen appears to be referencing a SEC investigation that he claims counsel was ineffective for failing to investigate further and to introduce evidence from at trial. In its order affirming the district court's denial of Petersen's Rule 33 motion, the Court of Appeals for the Eleventh Circuit addressed this investigation as follows:

> [The Defendant has not] demonstrated how any information in the Kirkland investigative file would have led to a different result at his trial. Defendant's conviction related to offenses distinct from any involvement by Kirkland with Westover. Thus, a decision by the Government not to prosecute Kirkland does not translate into a conclusion that Defendant was innocent of any wrongdoing. As Defendant has not shown that the above evidence would likely have made a difference in his trial, the district court did not abuse its discretion when it denied Defendant's motion for a new trial on this ground.

(Doc. 242 at 7). For the same reasons, Petersen fails to satisfy the *Strickland* prejudice prong and this claim of ineffective assistance is without merit.

13

In Claim II.A.ii, Petersen claims counsel was ineffective as follows: "The lack of investigation, confirmation and obtaining the FBI's Investigative file by counsel related to unindicted Westover Managing Member Arthur G. Cohen the information likely in this file would have exposed Cohen's prior bad acts that were identical to the fraud in the present case yet not presented to the jury due to the lack of 'reasonable diligence' of counsel." (Doc. 237 at 12). The Court of Appeals held:

> Even if such a file did exist, Defendant has not shown how any information in the file would be favorable to him, especially considering that a significant portion of it would contain information obtained prior to the initiation of the Ponzi scheme at issue here. Further, Defendant was convicted for his actions regarding Ramco 1, with which Cohen never had any connection. Indeed, because Defendant's conviction rests on evidence unrelated to Cohen's involvement with Westover, Defendant has not shown that evidence related to Cohen would have changed the outcome of his trial.

(Doc. 242 at 9-10). For the same reasons, Petersen fails to satisfy the *Strickland* prejudice prong and this claim of ineffective assistance is without merit.

In Claim II.A.iii, Petersen claims that counsel was ineffective as follows:

> The lack of any 'reasonable diligence' on the part of counsel to confirm statements made by the Government related to extradition of Timothy Durkin, when Durkin had never been arrested to begin extradition, as stated in a pretrial continuance motion and at trial by FBI Agent Kennedy's testimony. Also not confirmed and requested discovery by counsel was the issuance of an INTERPOL Red Notice and NCIC warrant as stated to have happened to the jury. No objection was made either by counsel of the lack of existence of these warrants in any discovery to Petersen.

(Doc. 237 at 12). The Court of Appeals rejected similar claims holding:

> Defendant has not shown that any testimony regarding the FBI's efforts to find Durkin was false because the absence of Durkin from the United States Marshals' fugitive list does not mean that the warrant was not entered into NCIC. Similarly, that Interpol did not publish the Red

Notice until four months after the trial does not contradict testimony that the warrant was "forwarded" to Interpol. Even if the testimony had been untruthful, Defendant does not show how his prosecutors knew or should have known that the testimony was incorrect. Indeed, as this Court noted in affirming Defendant's conviction, there was no misconduct surrounding efforts to extradite Durkin or anything improper about the testimony. *United States v. Sencan*, 629 Fed. App'x 884, 891 (11th Cir. 2015). Finally, even if the Government's efforts to apprehend Durkin were lackadaisical, Defendant has not shown how Durkin's presence would have made a difference in Defendant's trial, given the ample evidence against him.

(Doc. 242 at 10-11). For the same reasons, Petersen fails to satisfy the *Strickland* prejudice prong and this claim of ineffective assistance is without merit.

In Claim II.A.iv, Petersen claims that counsel was ineffective as follows:

The failure of counsel to identify and expose the lack of the 4 pages of Trial Exhibit 200, and the related terms that exonerated Petersen and exposed Sencan as acting alone and unauthorized to make any representations or extend any privity of contract to any party related to the Ramco & Assoc. LLC, Westover Co-Investment Agreement. The lack of investigation and exposure of favorable exculpatory evidence by counsel has irreparably harmed Petersen by all measures, of a false conviction, unnecessary incarceration and imposition of a restitution order that is not warranted, as confirmed by the SEC findings in the mirroring Kirkland SEC case. If all Courts (District, Appeals, and Supreme) find that counsel did not perform 'reasonable diligence' it is ineffective counsel and harmed Petersen's due process rights.

(Doc. 237 at 12). In essence, Petersen argues that counsel was ineffective for failing to pursue a theory that Trial Exhibit 200 was manipulated in some way. With regard to Trial Exhibit 200, the Court of Appeals held:

Defendant next argues that McCain falsely testified to signing a co-investment agreement with Ramco and Westover, with the "agreement" being entered as the Government's Trial Exhibit 200, and that the Government knowingly relied on testimony it knew to be false. Defendant further argues that the Government tampered with its Trial Exhibit 200 by removing the last four pages of the document, which, Defendant alleges, contain exculpatory evidence, and which action

15

> rendered the document a forgery. Defendant bases this allegation on a comparison of Trial Exhibit 200 to a different co-investment agreement between Ramco, Westover, and other companies that contained additional pages. Because this other agreement is a wholly separate agreement, however, Defendant cannot show that Trial Exhibit 200 was altered or constituted a forgery merely because it was not identical to this other agreement

(Doc 242 at 7-8). For the same reasons, Petersen fails to satisfy the *Strickland* prejudice prong and this claim of ineffective assistance is without merit.

Petersen's next claims of ineffective assistance all pertain to his allegations that counsel was ineffective for failing to investigate and object to the "perjury" of government witnesses Wesley McCain, FBI Agent Kennedy and FBI witness Kathryn Scott. (Doc. 237 at 12-13, Section II. B., generally). First, other than conclusory statements conveying his belief that the testimony was perjured, Petersen has presented no evidence of perjury. Second, Petersen has failed to present evidence that had his counsel been able to impeach the testimony, that Petersen would have been acquitted. That is mere speculation on Petersen's part. Furthermore, Petersen's counsel could not have stopped the witnesses from testifying. The witnesses were called by the prosecution during its case in chief to present the facts as alleged in the indictment. As a result, Petersen has failed to satisfy the *Strickland* prejudice prong, and this claim of ineffective assistance fails.

In Section II. C., Petersen claims that counsel was ineffective for failing to object to "unauthenticated co-investment agreements." (Doc. 237 at 13-14). Petersen's conclusory argument is without merit as he has failed to establish how the absence of this evidence would have affected the outcome of his case.

16

In Section II, D., Petersen argues that counsel was ineffective for failing to object to the "defective" Indictment. (Doc. 237 at 14).  Petersen argues that counsel should have objected to the Indictment because "The Indictment in this case did not allege Petersen as having committed 'any, not one' overt act. The claim that Petersen somehow 'aided and abetted' was not ever described or defined." (Id.).  The general principles governing the sufficiency of an indictment are well established.

> When analyzing such challenges [to the sufficiency of an indictment], we give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations. Such a common sense construction is satisfied through consideration of three factors: whether the indictment 1) presents the essential elements of the charged offense, 2) notifies the accused of the charges to be defended against, and 3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. These factors ensure the provision of constitutional notice and due process. Ultimately, the appropriate test is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards. However, even when an indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.

United States v. McGarity, 669 F.3d 1218, 1235–36 (11th Cir. 2012) (internal citations and punctuation omitted).

After considering the general principles regarding the sufficiency of an indictment discussed above, the undersigned concludes that a reasonable attorney would not have filed a motion to dismiss the indictment. Additionally, since any deficiency could have been easily cured by obtaining a superseding indictment after a motion to dismiss was filed, there can no prejudice from counsel's failure to

challenge the sufficiency of the indictment. Accordingly, this claim of ineffective assistance fails.

In Section II. E., Petersen alleges counsel was ineffective based on "the failure of counsel to investigate the requirements of the charges that a security was engaged in this case, there is not one engaged security on record, thus no privity could have been obtained by any party in this case purported to be an investor." (Doc. 237 at 14). The undersigned is unable to make sense of this argument but it appears to be based on Petersen's contention that Trial Exhibit 200 was manipulated. (See Doc. 238 at 18, n. 4). As discussed above, the arguments pertaining to Trial Exhibit 200 are without merit. Thus, any perceived failure of counsel to challenge Trial Exhibit 200 fails to meet the *Strickland* prejudice prong.

In Section II, F. Petersen appears to raise several claims of ineffective assistance: 1) counsel should have asserted a good faith defense; 2) counsel should have raised an argument regarding an incorrect reference to Petersen as a trustee of Ramco; and 3) counsel should have moved to sever. First, Petersen's general reference to a good faith defense is unclear. Second, each of these arguments is vague, and fails to indicate how the outcome of the trial would have been different (other than in a conclusory manner). Accordingly, each claim contained in Section II, F. fails to satisfy the *Strickland* prejudice prong.

In Section II. G., Petersen argues that counsel was ineffective for failing to request *Daubert*[12] hearings regarding testimony of two FBI agents. As the United

---

[12] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–593 (1993).

States argues, Petersen failed to raise this claim on direct appeal. Thus, it is procedurally defaulted.  However, even if the undersigned were to consider the argument, Petersen's assertion that he was prejudiced by counsel's failure to request a *Daubert* hearing is speculative and unsupported. To show that he was prejudiced by counsel's alleged failing, Defendant first must show that had there been such a hearing, the agents' testimony would have been excluded. Petersen has not offered anything concrete in support of this position. For instance, he has not suggested any way in which the agents' credentials were lacking, such that either was unqualified to offer the testimony in question. Thus, Petersen's *Daubert* based ineffective assistance of counsel claim fails to satisfy the *Strickland* prejudice prong.

In Section II. H., Petersen makes yet another attempt to raise a prosecutorial misconduct argument by arguing that counsel was ineffective for failing to object to the United States' statements during closing arguments. Petersen's prosecutorial misconduct arguments have been repeatedly rejected by this court and the Court of Appeals. Accordingly, any alleged failure of counsel to object to prosecutorial misconduct is without merit, and this claim fails to meet the *Strickland* prejudice prong.

In Section II. I., Petersen alleges that counsel should have investigated the ownership of Westover and Ramco and Associates and should have called certain witnesses. (Doc. 237 at 17-18). Other than making a conclusory, general allegation that his rights were harmed by this failure, Petersen fails to and this claim fails show

19

how he was prejudiced by these alleged failures. Thus, he fails to meet the *Strickland* prejudice prong.

For the reasons discussed herein, the undersigned **RECOMMENDS** that Petersen's ineffective assistance of counsel claims be **DENIED.**

### C.    Court's Role as Gatekeeper

In his final claim, Petersen alleges that the district court failed to uphold its gatekeeping function with regard to permitting expert testimony of FBI agents without holding a *Daubert* hearing. This claim is procedurally defaulted as Petersen could have raised it on direct appeal but failed to do so. His reference to "newly discovered evidence" is not persuasive as the alleged "newly discovered evidence" was contained in a December 29, 2015 order of the district court. (Doc. 237 at 18-19). Thus, the undersigned **RECOMMENDS** that this claim be **DENIED.**

### D.    Motion for Judgment on the Pleadings and Motion to Unseal

On January 29, 2018, Petersen filed a motion labeled "Ex Parte Motion for Judgment on the Pleadings related to 2255 Motion before this Court" and later filed a Motion to Unseal the same (Docs. 247, 248).

In the Motion for Judgment on the Pleadings, Petersen argues that the United States did not specifically respond to each of his arguments and that his § 2255 motion should be granted as a result.  Even if this were accurate, any failure to address a ground by the Government does not entitle Petersen to relief. *See Aziz v. Leferve,* 830 F.2d 184, 187 (11th Cir.1987) ("[A] default judgment is not contemplated

in habeas corpus cases ....”). Accordingly, the undersigned **RECOMMENDS** that the Motion for Judgment on the Pleadings (Doc. 247) be **DENIED.**

Petersen also filed a Motion to Unseal his Ex Parte Motion for Judgment on the Pleadings. (Doc. 248).  As Petersen is proceeding *pro se* he may not have realized that, generally, a motion styled as “ex parte” is filed under seal in this Court.[13] Because the motion was styled as “ex parte,” the Clerk of Court sealed the motion. Petersen now indicates he did not intend for this motion to be sealed. Thus, the undersigned **RECOMMENDS** that the Motion to Unseal (Doc. 248) be **GRANTED.**[14]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.  18 U.S.C. foll. § 2255, Rule 11(a) (“The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.”).  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court’s denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may only issue where “the applicant has made a substantial showing of the denial of a constitutional right.”  28 U.S.C. § 2243(c)(2).

---

[13] *See e.g.* Black’s Law Dictionary (10th ed. 2014)(defining ex parte as ““[o] n or from one party only, usu[ally] without notice to or argument from the adverse party).

[14] Petitioner also states that access to 1:17-cv-00127-WS is unavailable. (Doc. 248 at 3-4). This civil companion case was opened when Petitioner filed his motion pursuant to 28 U.S.C. § 2255. There are no filings in 1:17-cv-00127-WS because all filings related to the § 2255 petition travel under the criminal case number, 1:13-cr-00117-WS-2.

When a habeas petition is dismissed on procedural grounds, such as in the instant case, without reaching the merits of any underlying constitutional claim, "a COA should issue [only] when the prisoner shows…that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003)("Under the controlling standard, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' ").

Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further.  *Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the undersigned recommends that the court conclude that no reasonable jurist could find it debatable whether the Petitioner's petition should be dismissed; thus, he is not entitled to a certificate of appealability.

## APPEAL *IN FORMA PAUPERIS*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's

finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).""). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D.

Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith.  I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the foregoing analysis, the undersigned recommends the Court certify that any appeal by Petitioner in this action would be without merit and therefore not taken in good faith and, accordingly, find that Petitioner is not entitled to appeal *in forma pauperis*.

<u>**CONCLUSION**</u>

For the reasons set forth herein above, it is **RECOMMENDED** that Petersen's § 2255 petition be **DENIED with prejudice**.  The undersigned further **RECOMMENDS** that Petersen be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

Additionally, the undersigned **RECOMMENDS** that Petersen's Motion to Invalidate, Reverse, Set-Aside, or Modify the Order of Restitution pursuant to Federal Rules of Civil Procedure 60 and 62. (Doc. 241) be **DENIED,** the Motion for Judgment on the Pleadings (Doc. 247) be **DENIED,** and that the Motion to Unseal (Doc. 248) be **GRANTED.**

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything

in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **16th** day of **May 2018**.

 */s/Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**